SHAW, Judge.
This appeal, by a workers’ compensation claimant, challenges the deputy commissioner’s order denying her health care benefits from February of 1978 to June of 1980, limiting health care benefits commencing June 29,1980, to $80.00 per week and denying her request for penalties.
In December of 1973, the claimant suffered a compensable injury that required surgery for removal of a disc. Recovery was unremarkable, and she still experiences back pain that radiates into both lower extremities, neck pain that radiates down the arms, a persistent rash, and carpal tunnel syndrome in both hands.
The deputy commissioner, on January 12, 1977, entered an order finding the claimant permanently totally disabled with a maximum medical improvement date of May 21, 1976. Penalties were assessed on late paid temporary total compensation benefits and for failure to comply with a September 26, 1975, order.
On February 13, 1978, and July 3, 1980, claims were filed for home health care, failure of the employer/carrier to pay permanent total disability benefits at the rate determined by the January 12, 1977, order, and the improper taking of a social security offset. These claims resulted in the order now being reviewed. The carrier agrees that it failed to pay compensation at the rate ordered by the deputy and failed to offset the correct social security benefits. These issues are resolved in favor of the claimant.
Points I and II relate to the award of home health care benefits. In a letter dated September 25,1980, the carrier voluntarily agreed to pay for attendant care at the rate of $80.00 per week, computed as follows: an unskilled person capable of assisting the claimant, working in the home for a total of four hours per day at the rate of $4.00 per hour, would earn $16.00 per day or $80.00 for a five-day week. The carrier picked up payment for the care as of June 25, 1980, the date the treating physician’s office notes first suggested the need for such care. The deputy commissioner determined that the carrier’s payments of $80.00 per week were adequate compensation for the type of services being rendered and that there was no entitlement to home health care benefits between February 13, 1978, and June 25, 1980. We disagree on both counts. The record does not support the $80.00 per week figure. The only credible evidence on this issue was the testimony of Faye Wertz, who testified that she provided unskilled home health care services to the claimant and was paid $164.00 per week plus room and board. She opined that the room was worth at least $135.00 per month and board at least $6.00 per day. Even so, she left for higher wages.
We turn our attention next to the commencement of the award, and here again the deputy’s findings are not borne out by the record. He finds a lack of adequate medical support upon which to predicate an award of health care services during the period between February 13, 1978, and June 25, 1980. Evaluating the claimant on the two dates, Dr. George L. Ford opined that her condition was fairly stationary, “maybe a little worse than she had been.” When questioned relative to the claimant’s need for home health care, the doctor gave the following response:
Q Do you feel that a practical nurse is necessary at this time for aiding and assisting Mary Davis?
A No.
Q What would you describe as the kind of service that she needs at this time?
A Well, I think that Mary needs to have somebody at home to do her housework and her type of cleaning of the house, making the beds, vacuuming, perhaps even making meals or assisting her in her ability to perform her chores which are part of being a housewife and in the mornings, probably helping her get her lower extremity garments on.
*595 Also, to put her in traction in the morning, things of that nature when there is nobody else at home.
I think she can get into her cervical traction but I don’t think she can get into her pelvic traction without somebody else giving her help.
Q When you mentioned cooking and chores, is this also cooking for herself?
A Yes. I think that cooking for herself, I think it’s a psychological problem with Mary in that she has a situation where she is not able to perform household chores and this has become a depressing situation for her.
I think if she had — was able to substitute this type of — or was actually able to perform this work even though she was not doing it, she was performing it, I think this would be a great thing for her.
I don’t think she is able to stand up and cook for some period of time. If someone was able to do that during the day that would benefit her physically by helping her with meals and also benefit her psychologically by being able to produce and do the household work which she has always done over the years.
Q As far as the psychological aspect of it, is it your opinion that that may aid her in taking to the pain that she is experiencing from her injuries?
A I think anytime you have pain, you have a psychological problem. Of course, the pain is aggravated and if you are in a better condition you can tolerate pain better and I think that this inability to perform at home has gotten to the point where it does depress her and depresses her more and more and I think this — and of course lowers her ability to tolerate pain.
Q These services which you feel are necessary for Mary, do you feel they are needed as a result of her inability now to be able to perform those because of injuries sustained from the accident in 1973?
A Yes.
Q How often do you feel these services are needed for Mary; on a daily basis?
A Yes. I would think on a daily basis.
Q Do you have any idea of, as far as the timing of saying whether or not she needs it for any specific length of time during the day?
A Well, I think that depends on the size of her home and what has to be done and the efficiency of that help she has but I would think three or four hours a day.
We find Dr. Ford’s testimony incompatible with the deputy’s finding that there is a lack of adequate medical support upon which to award home health care between February 13, 1978, and June 25, 1980. It is readily gleaned from the doctor’s testimony that the need for home health care service is twofold: the manual assistance needed by the claimant and the psychological benefits that would accrue to her. An additional reason given by the deputy for denying home health care benefits during the disputed period was the fact that “the services performed during that period of time were done by family members and were of an unskilled nature.” This is no doubt true, but the fact that family members are providing services that are statutorily placed upon the employer does not shift the employer’s responsibility to the shoulders of the family members.
Again, based upon the record, we are unable to concur in the deputy’s denial of penalties based upon his determination that the carrier acted in good faith. When we view the handling of this claim in its totality, we find that the carrier failed to pay temporary total compensation benefits outlined, failed to comply with the September 26,1975, order, failed to pay permanent total disability benefits at the rate determined by the deputy, and failed to compute correctly the social security offset. When the claimant requested home care services, the carrier, instead of attempting to determine whether a need for the services existed, waited a period of two years before commencing to provide the care. Any doubt as to the good faith efforts of the carrier are completely removed by the claims supervisor’s deposition, which evi *596 dences a nearly total contempt for the workers’ compensation process. During the course of the deposition he was persistently unresponsive to germane questions, refused to answer certain questions by invoking the fifth amendment, threatened to leave the deposition at the end of his work day, and refused to look at matters in his file; when pressed to answer certain questions, he complained of eye problems, and left the deposition to throw up. During the course of the deposition he referred to the claimant’s attorney as a “jackass” and threatened physical violence. This antagonistic attitude may well explain why the 1978 claim was not investigated, why the deputy commissioner's orders were not complied with, why the social security offset was not properly taken, and why benefits were not paid on time. We have seldom encountered such blatant bad faith by a claims supervisor. The deputy’s finding of good faith is accordingly reversed.
REVERSED and REMANDED to the deputy for reconsideration consistent with this opinion. If, in order to comply with this opinion, the deputy finds it necessary to take additional evidence, he is authorized to do so.
MILLS and LARRY G. SMITH, JJ., concur.